Our first case is Blue Sky the Color of Imagination, 2024, 1710. Mr. Duncan. Good morning, Your Honors. May it please the Court, Chris Duncan for the appellant Blue Sky the Color of Imagination. We'll refer to him as Blue Sky. The lower court committed reversible error by ruling contrary to this court's decision in Mead. And it was in two respects. First, the lower court defined diary different than this court defined diary, a tariff term, in the Mead decision. Secondly, using that flawed term, the lower court classified Blue Sky's calendar year 2021 weekly monthly planner calendars as diaries rather than calendars. That's an example of one. You have the sample before you. Heading 4910 is the heading that covers calendars. It covers calendars of any kind. That tariff language could not be broader. It has no limitations, any format, any size, any room to write. As long as it's a calendar, it's classified in heading 4910. Blue Sky's calendar year 2021 planner calendars, and you have four different models before you. There was an explanatory note, though. That's a problem for you. And it says, print a calendar that's not incorporated with memorandum pads incorporating calendars and diaries, including so-called engagement calendars, are excluded. And Your Honor, first of all, we don't even need to look to the explanatory notes because the heading language itself is abundantly clear. It says calendars of any kind with no limitations are calendars. You only look to the explanatory notes, we know, which are non-binding and are not even created by Congress, unlike the tariff code. So just so I understand, Your Honor, your view of the meaning of the heading where the heading says calendar, are you suggesting that a 400-page book with a calendar on the last page of that 400-page book counts as a calendar? No, because in that case, you would have potentially two different types of products. And the calendar would be the minimal calendar insert single page, just like the item in the Mead case only had one single calendar page insert. So this court properly ruled that the entire product wasn't a calendar simply because it had one page that was a calendar. OK, so there's a little more analysis that has to happen to figure out whether this merchandise counts as a calendar. Not in our case, Your Honor, because in our case, every single page is a calendar. Essentially, you have a yearly calendar, then you have several pages of a monthly calendar. Both of those calendars, the government has conceded are calendars. And then you have a section of weekly calendars. Just like on a computer or a mobile phone or this court's calendar, you can have different views of a calendar, and it's still a calendar, no matter whether it's the yearly, monthly, or weekly view. So here, virtually every page is a calendar. It's a dated page that allows you to ascertain between multiple dates, look to the future, make sure you don't have conflicts on your calendar. That's what every page of Blue Sky's product has. So suppose we have something, a book that has 365 pages. Each page has a date at the top. And the book is called Engagement Notebook. And on each page, designated what I have to do today, let's say 8 o'clock, 9 o'clock, 10 o'clock, and so forth. Is that a calendar? Would that fit within a calendar? Based on the tariff language, yes. Because again, every single page is a calendar page. In that case, you might consider it a daily calendar. But again, there's no restrictions in the tariff language. And the World Customs Organization came up with the explanatory note. Even though you would agree that that is flatly inconsistent with the explanatory note? Well, there's a couple things about the explanatory note. First, the only court that's ever looked at this, the Scribner's, said it was a calendar. Let me get your answer first to whether you think it's inconsistent with the explanatory note. It looks to me like it's flatly inconsistent. First, as I would argue, the explanatory notes need not be referenced. I understand. But let's start with the proposition that it is inconsistent with the language of explanatory note. Correct? Yes. We can agree that there's some inconsistency. But in this case, there's another reason for rejecting the explanatory notes. They directly conflict with Mead. Because the engagement calendar referred to in the explanatory notes is a subset of what the explanatory note says is a diaries. We know that we must follow Mead. So diaries is only a retrospective record of the past. So following that train of thinking, an engagement calendar must be a retrospective record of the past. So there's another reason that you must reject the explanatory notes. They directly conflict with Mead. I don't quite understand your explanation for why the explanatory note conflicts with Mead. Mead said whatever that merchandise was falls under 4820, right? The merchandise before Mead was an item that had a single page of a calendar. And then 99% of it was undated notes pages, essentially. So Mead's note to the front. So it fell under 4820. Yeah, ruled under 4820. And this explanatory note, 4910, is basically saying 4910 excludes diaries. Correct. But diaries avoids. Why is that inconsistent with Mead? Because Mead says diaries is only a retrospective record of the past. We know that the Blue Sky product is for the future. So we know that the Blue Sky product cannot be a type of diary, because a diary, again, according to Mead, is only a record of the past. That's a legal conclusion that Mead came to. So there's no way that Blue Sky's product can be a diary. The explanatory note says diary. Maybe it can be an engagement calendar. Not according to the explanatory notes, because the explanatory notes say that engagement calendar is a type of diary. It's in a parentheses, including so-called engagement calendars. But I'll take your point, Your Honor, and I'll go one step further. Even if part of the Blue Sky product is a, quote unquote, engagement calendar, the government, again, has conceded, and so has the lower court, that the yearly calendar and the monthly calendar are both calendars. So we're only talking about the weekly view. Even if the weekly view is an engagement calendar, you must proceed then to General Rule of Interpretation 3. Again, we don't think you need to go there, because it's all under GRI 1, calendar of any kind. But if you take that logic and you move to portion of it is an engagement calendar, or something that's not in Heading 4910, then you would go to the General Rule of Interpretation 3 and do an analysis between the two headings. Because now you have a product that has two different headings comprising two different parts of it. And under that analysis, you still come out with a classification of calendar, because the essential character of this product is the calendar. It expires. What about explanatory note 4820, which says that 4820 includes, among other things, engagement books? Do you have a view as to whether engagement books are essentially the same thing as engagement calendars referenced in explanatory note 4910? Both terms are generally undefined, hard to find definitions. But our view would be, yes, they're essentially the same thing. And both of them, again, don't apply for the reasons that I've already discussed. But even if, again, a portion is an engagement book, the key portion, the essential character of this item is the dates. Unlike in me, this is a dated product. It's only good in 2021. It's obsolete now. It's not a notebook that you could use or even buy now. So it's not a 4820 product. All of those, all of the listed items in 4820 are things you take notes on about the past and you can use in perpetuity. Our product is dated. Assume we agree with you about the effect of Mead and disagree with Judge Rustani's view of the scope of Mead. We would, and assume further that we don't agree with you that 4910 is the right category and we're cast into 4820. Which do you think, which subset of 4820 do you think is appropriate given those assumptions? And I would call your attention particularly to 4820.10.20.60 as one candidate and 4820.10.40.00 as the second candidate. I can't emphasize this enough, Your Honor, and I want to be respectful of your decision. I know you're going to say, that has nothing to do with this case. You shouldn't be looking at 4820. But let's, we don't have a whole lot of time, so I don't want to fence with you about whether 4820 applies or not. I understand your position, but I do want you to give me an answer as to which of those two, if those are the two that are most pertinent for 4820, you think this would fall under? Difficult question. I would answer that it's certainly not of any of the listed items, so it's the other candidate. So it has to be another. It's another candidate. So we're down to two candidates, the ones that I mentioned. Which of those two do you think is the right one? The other. Which other? There's two others. There are two others. The other that the government has cited. Which is, the government has cited 4820.20, 4820.10.40, I believe. And I'm wondering why 4820.10.20.60 isn't more directly applicable. Because, well, it's hard because neither are defined. But again, I would argue. Well, that's the nature of others. Sure. Well, the other would be if it's of the same character as the listed items under as geom generis. And our argument is it's unlike any of them. So it's quite a difficult question. Look, it doesn't really matter for our purposes. But it does for ours. Sure, it does for yours, because under Jarvis-Clark, you have to come up with a correctness. We have to come up with one. And oh, by the way, is this, in your view, a question of the law or fact? The classification is a question of fact, right? So yes, this is a decision that the court. Even though we know what the articles are, you're saying it's still a question of fact as to which of these categories applies. I would think Carl Zeiss and, what was it, JVC suggest the contrary, don't they? Well, it might be considered a mixed question of law and fact. But really, once you define what the tariff terms are, then, and if there's no dispute, as there is here, there's no dispute about the facts, right? So this is a de novo proceeding. You can come to a conclusion as to classification here. Then you're really just applying, you're making a factual determination as to whether this particular product fits into the classification as you've defined it. And whose decision are we reviewing here? Sometimes when we have dumping cases from the CIT, we look through the CIT decision, although give them respect, and look at, say, the commission. Who are we reviewing here, Customs or the CIT? You're reviewing the CIT. Because the CIT makes that determination. They give some level of preliminary deference to Customs. Although they didn't do that in this case. But ultimately, they make the decision here. So you're not looking through the CIT to Customs. This is a CIT decision. Now, I would note, Customs itself issued a ruling, which we were righted because we only found out about it late after briefing, that even a weekly view calendar is a calendar. And they just ruled that just a few months ago. So even Customs generally agrees with us. But in this case, you're looking at the lower court CIT decision. And under Decker's, the lower court certainly committed reversible error by not following the age. Just a quick question. Although there's no dispute about what these planners are, there might be a dispute about what's the appropriate characterization of them. And maybe that's a fact question. For example, the CIT described these planners as notebooks with a calendar. And in your brief, you dispute the characterization of this merchandise as notebooks. And you allege that the trade court impermissibly did a fact finding in characterizing these things as notebooks. So I'm wondering, is there still room for there to be some potential fact dispute here in this case? No, because we made that argument that the lower court certainly referred to them as notebooks. But that wasn't instrumental to the decision. Essentially, the lower court found that it minimized the value of the calendar, but essentially did a GRI-3 analysis and said, look, there's calendars here. And there's something that's other than calendars. I think the something that's other than makes it a diary. But in our case, if you take the lower court's and the government's position that there are multiple classifications at play, then it really doesn't matter what type of classification within heading 4820 you're talking about. You're just looking at, is the essential character of this a calendar, or is it something that you would be in 4820? And here, it's abundantly clear it's a calendar. This expires. It's obsolete. You can no longer use it. A notebook or any other item in 4820 could be used in perpetuity, could be used today. Our item is expired. Counselor, you're mostly through your rebuttal. We'll give you three minutes for rebuttal. Mostly through your time. We'll give you three minutes for rebuttal. Appreciate that. Ms. Triana. Good morning, Your Honor. May it please the Court. The weekly monthly planners are properly classified in heading 4820 as an item similar to those listed in the heading. And the trial court properly determined that they weren't classified in heading 4910 as a calendar. They sure look like calendars. And 4910 says calendars of any kind. That's true, Your Honor. But these are stationary products, the purpose of which is for the user to write down whatever they want to write down, whether it's planning for the future, whether it's in the past. I will point out that what you're pointing to are calendar pages. And what the government agrees are calendar pages. But 2 thirds of every single one of the items at issue, at least 106 of the 150 pages of every item at issue, are weekly planner pages that don't satisfy the definition of a calendar. And when we're classifying merchandise, we're classifying the item as a whole. And as a whole, the items are not calendars. Well, this is only one of them, of course. But every page needs a calendar. Those are not at issue here. So there are. Then why do we have them? That's unclear to me. So what I will tell you is that in this case, there were three different kinds of items. And only one of those categories is at issue now. That's the only one. The others have been cleared as calendars. The others have been cleared as calendars. So what we have at issue are the weekly planners. You're looking at a monthly planner, Your Honor. So if you're looking at the weekly planner, almost every one of the revived calendars. What about these two? Did it say weekly? The weekly and monthly, yes. Not, I don't, if it says weekly and monthly, those are the ones at issue. Almost every single one of the. Okay, these both say weekly plus monthly calendars. Yes. So these two? Their weekly and monthly planners are the ones at issue. Those are the only ones at issue. Almost every single one. It would have been helpful if someone had segregated out for us the ones that got sent to us as not at issue. I apologize, Your Honor. I mean, the ones that, only ones that are relevant are the ones that we have, they're fully in the, no, not at issue. So there are items that are in the appendix. Only the weekly planners are in the appendix. Those are the only items at issue here. So. Let me ask you the same question. I asked your opposing counsel, assuming that we conclude that Meade governs the question of whether these are diaries.  And you say that they're not calendars, but they fit within 4820. And I suspect that, well, from your brief, I gather, that you would regard them as falling into one of the two other categories. Yes. Which one and why? So interestingly, I had not considered that before, but when we did. Much to me, frankly, like the, well, go ahead. Give me your answer and then I'll. So I'll answer it this way. When we put it in 4820, you do an adjustum generis analysis, which you're looking at the common characteristics and the unifying purpose of the items that are listed. So I would say, if you are looking at all the items in 4820.10, there are a few more items in 4820.10 than there are in 4820.10.20. So if you're saying they're the common characteristics of all of those in 4820.10, it likely needs to go in 4820.10.40. But that's. So this would be a notebook under 4820.10.40.00. Right, so I would say that you would be looking at all of the common characteristics and unifying purpose of all of the listed exemplars in 4820.10, and they're all stationary items, the purpose of which is for the person to use, to write down, to plan their own time, and that's what they're marketed for, and that's what they're used for. I got a little confused by your brief as to exactly what designation in 4820 you really landed on. Your brief seemed to read to me as if we should just agree somewhere in 4820 that's what this merchandise is. And I don't think we can do it like that, right? We have to get granular and identify the specific subheading. Is that correct? Okay, so part of your brief seemed to be going off of the phrase similar articles in the headings, and then other places maybe you were suggesting it's one of the two others. What did customs say? Customs found that it was other. It was the 4820.10.40, that's where it was classified. That's what we argued for before the trial court. Right, then you come here, and then you start advocating for the similar articles phrasing. No, that's how you get to the similar, that's how you get to 4820.10.40. So it's not specifically listed, but when you have to do an analysis as what is similar articles, and when you do an analysis of what is similar articles, you do an adjucent generis analysis. How do you figure out what falls into articles that are similar to the listed exemplars? And when you do that, you look at the common characteristics and unifying purpose of all of the listed exemplars, and then you pull from that, and you say, okay, what is similar to what is listed? And that's what gets characterized as other. And then in your view, what is the decisive GRI rule? Is it GRI 1 or 3A, 3B? It's GRI 1. You don't get to GRI 3 unless the merchandise is prima facie classifiable in two separate headings, and that's not the case here. What we agreed to was that there are pages in a weekly planner that are calendar pages. That does not make the item prima facie classifiable as a calendar. You have to classify an item as a whole, and you look to both the common meaning of the term calendar, and you have to look at the explanatory notes, and here they're consistent, and they just really explain. Can you just stop right there? Sure. I actually appreciate if you could slow down a little bit. I'm sorry. I'm not familiar with this area of the law so much, so I need, it's all very technical. At what point did the explanatory notes become relevant in the analysis of the classification question? So the explanatory notes are almost always relevant. So they're not set. Where, when? When. So you would first look at the common meaning of a particular tariff term, and then you would look at any chapter or heading notes, because those are statutory. Beyond that. But do we have any case law that says you consult the explanatory notes at GRI 1, not GRI 3? Do we have anything, or? None that I can point to, but almost every, I mean, I could probably find a case that says that, but most cases probably wouldn't be deciding when GRI 1 or GRI 3, but you look at that, you look at the explanatory notes, because they're the official guidance of the World Customs Organization, which is the organization that came up with the harmonized schedule. Right, not binding on us. Not binding us, but there's a significant amount of case law that say they're generally indicative of the proper meaning of the tariff term, and they're followed very often by the Federal Circuit, by the Court of International Trade. They're always looked at, and they're only not looked at if they're inconsistent with the language of the particular heading, and they're not here. They further explain what- What about the Mead case? The Mead case is why the government didn't argue it was a diary in the first place. I will say that following a pure GRI 1 analysis, Judge Rustani, I believe, is right, in that it is a diary. She interpreted diary in the correct manner. The Mead case, but being bound by the Mead case, we did not argue for diary before the Court of International Trade, but Judge Rustani found that- You really felt bound by the Mead case, but Judge Rustani did not. That's entirely true. So what is your position now? Do you think you were right in the first instance, or she is right? I always hesitate to say Judge Rustani is wrong about anything, but I do- So do we. Right. Not always. Not always. Hesitate, but not- I hesitate to say that. I think that Judge Rustani's pure GRI 1 analysis was correct. The government was bound by stare decisis and didn't argue for that reason, and I hope that answers your question. We believe it is a diary, but because of the decision by the Federal Circuit in Mead, we did not argue for diary. Let's assume that this panel feels bound by Mead, because it is bound by Mead, and that means that we cannot rely on the trade court's analysis that this merchandise counts as a diary, because Mead says diaries are retrospective, not prospective. Should we perhaps remand this back for the trade court to decide, in fact, and do a new analysis that's not infected with this diary framework that she applied? I don't think you need to, Your Honor. Because her analysis of why, in her view, these products are not calendars seems to be seen through the lens of why they are diaries, and I think that's a little problematic, and so maybe for that reason, there needs to be a do-over, especially because we don't really have the benefit of clear thinking on this question from the trial court without this whole diary issue shot through the analysis. I don't think that the court needs to remand it, because I think these are legal analysis as to what the scope is of heading 4910, and that it doesn't fit within 4910, and what the scope is of heading 4820. They're legal issues, and there are no issues of fact here. The calendar, the weekly, monthly planners, which are the only items that are in the appendix, there's no disagreement as to what they are. There's no disagreement as to what they're used for. They're used for a person to write down whatever it is they choose to write down on pages, the vast majority of which are notebook pages that are divided into, I guess, eight groups where there's a date, but that doesn't make them a calendar, and if you look at the plain language of, or the interpretation of what is a calendar, the entirety of the item does not fall there, and the explanatory notes are extremely helpful in this case for some of the reasons that Your Honor's already pointed out. Engagement calendar is specifically excluded from heading 4910. It's specifically included in heading 4820. Another thing, these two headings seem to work. You can look at them together, and they're consistent. One is an item of the printing industry. That's 4910, and the essential character is from the printing, and that also provides guidance and confirms, essentially, how the government has interpreted the word calendar, which is just a reference tool. It's the printing that's important here. It's the reference tool. Where does this date fit? What about the recent customs decision the other side points us to in the 28J letter? I don't have. Designating something called a weekly view planner organizer as a calendar. Your Honor, I just found out about that on Friday. I don't have all the information about the ruling or the merchandise, but any decision by the agency is not binding on this court. Frankly, customs should not have issued that decision because the issue that was at issue in that ruling is before the court, and by regulation, that shouldn't have been issued, but I don't know exactly what the product is, but to the extent the product is the same or substantially similar to the weekly, monthly planner at issue, the customs decision was wrong. But I don't know all the information about the merchandise or whether it actually is substantially similar to the merchandise at issue. So you think we can simply rule, in this case, as to which classification is correct? I do, Your Honor. I think you could, there is an analysis as to, in the trial court's decision, as to why it's not 4910 and why it's not a calendar of any kind, and certainly this works in that. Right, I understand that. And you say that it is a form of notebook, I take it? Would that be the subcategory that you would identify as being applicable in 4820? I think it would fall under the other category that we spoke about. Right, but in order to get there, you have to look at the various subcategories that are identified, starting with 4820.10, right? Well, yes, but as I was saying. And most of those are inapplicable, you would agree? I would say they're not. It's not a register. It's not EO. It's not an account book. It's not an order book, right? No, so it's not. You with me? It's not classified in any of those provisions. So what we're saying is it has to be classified as an article that's similar to the ones that are listed, not any one of them individually. Well, but if it's, and here is really kind of the point of my question about which other is the right other. If it's under 4820.10.20.60, then doesn't it have to be one of the items that's identified in 4820.10, just other than the ones that are in 4820.10.20 through 40? I don't think it ever has to be listed in the heading because that would make it an EO nominee provision. But I think it, whether you're saying that it's similar, so I think here's the distinction. If it's a similar article to the one, the only the ones listed in- Right, notebooks are similar articles, right? Or similar articles. So it could be an article similar- I guess you're saying it's in the listing, it says and similar article. Yeah, so if you're trying to define the scope of what is a similar article, and I think that it- But this is either a notebook or a similar article in your view? I would say it's an article that's similar to the listed exemplars. And it could be an article similar to a diary. I mean, if we don't want, if the court doesn't find this- Instead of saying article similar to one of the listed items, don't you mean just the, it falls under quote-unquote and similar articles? Yes. Okay. It falls under and similar articles, but just to, if the court found that it's not a diary, because they're bound by Mead, the only distinction we're making here between the item at issue and the item, the decision in Mead, is whether you can write down things about the past, or you can write down things about the future and the past. So how is this not be, would this not be an article similar to a diary? Because the only distinction there is to be made is that you can write about the past and the future. So if we're, if the court is, as I believe, bound by Mead. So whether you want to find it similar to a notebook, similar to a diary, or similar to the listed exemplars, which you find the common characteristics of. Well, maybe this could benefit from further briefing down below. I mean, we're, you know, spitballing interesting ideas right now on how to characterize this planner. But does it make a difference? It doesn't make any consequential difference which other that this would fall under, correct? No, Your Honor, it doesn't. In terms of the ultimate duty. So my understanding is 4910 and 4820 are duty-free in themselves. Yeah, but there's an add-on. Yes, it wouldn't, it doesn't make a difference which other, yeah.  Thank you, counsel, your time has expired. Thank you, Your Honor. Mr. Duncan has some rebuttal time. I do. It certainly does make a difference, Your Honor, because of these 301 Trump tariffs and the current tariffs, this is over a $20 million case for this small company. So there certainly is a difference. When we say difference, I think we were talking about where if we assume that it's in 4820, and it's either one of the two others, though there's no difference there, correct? Correct there, you're correct on that. That's what I think we were referring to. And I'm glad we have the samples for all the different types of calendars that are present because they're all used exactly the same. Government agrees that the monthly calendar is a calendar, but you can write just as much in the monthly calendar as you can in the weekly calendar. This idea of writing, by the way, is completely invented by the government. There's nothing in the heading that limits 4910 calendars to calendars that can't be written in. It doesn't say that, it says calendars of any kind. Every single type of calendar is in 4910. We can't forget that. We write in our calendars every day, right? There's almost no calendars you can't write in. Also, the expansiveness of heading 4910. Calendar blocks is listed right in the heading title. That's congressional, that's statutory. Calendar blocks, going to Judge Bryson, your point before, is just a single page of a day, and you tear it off. So that is still a calendar. So to your point, a daily calendar is still a calendar. Also, the government is incorrect as to GRI-3, your question, Judge Chin. It's not just whether an article is classifiable in multiple headings and a whole. The explanatory, GRI-3 makes clear, it's also in situations where part of it is classified in one heading and another component. That's GRI-3, but what about GRI-1? Only if it's classifiable entirely in one heading does GRI-1 apply, so that can only be 4910. Because even the government and the lower court agree that some components are calendars. So you cannot get to 4820 under GRI-1, because that would mean the entire thing. Why can't notebooks contain calendars as well? For example, my 400-page book with a calendar on it. Because you would still have to go to GRI-3 and find that the notebook is the essential character because you have two components classified in two different headings. So you'd still, because the entire thing is not classifiable in 4820, say in your scenario, you'd still have to go to GRI-3 and say, look, it's not 4910 because there's only one single page. In contrast, every single page of ours is a 4910 calendar. And that includes all the articles you see before you. The calendar printing, to the government's point, is the point. This is only good in 2021. The calendar printing is on every single page, whether it's weekly, monthly, or yearly. The calendar printing is the essential character of this. No one buys this for empty-lined writing space. They buy it because it has a calendar on every page. And they can make simple notes, and not extensive notes, just a simple line or two for every day, just like any calendar. Also, we should note, and I think you pointed this out, Judge Chen, the advertisement on the front of the weekly-monthly planner says it contains weekly and monthly calendars. That's the main point. So it's advertised, essentially, as containing nothing but calendars, with a few extra notes pages. And again, if the entire thing was a notebook, why would you have extra pages for notes? The point is, every single page is a calendar, and you have one or two pages at the end for actual note-taking. So this is a clear Heading 4910 product. Under GRI 1, we don't need to remand the case because it's clear on its face that this is an article that falls under 4910, and is classified as a calendar of any kind, and that, just like the desk calendar you have before you, and just like the monthly calendar, which is essentially the same exact thing as a weekly-monthly calendar. Thank you, counsel. We appreciate both arguments. The case is submitted. Appreciate your time.